**F. L. Rabe, Plaintiff in Error, v. D. B. Lester, Defendant in Error.**

**Gen. No. 17,714.**

LANDLORD AND TENANT—*eviction.*   Where the evidence shows that the lessee, before the expiration of the lease, vacated the premises, turned the keys over to the janitor and asked the agent to re-rent, and that the lessor entered a few days later to decorate and afterwards re-rented, it does not show an eviction.

Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1911.   Reversed and remanded.   Opinion filed December 17, 1912.

ABRAM L. MYERS, for plaintiff in error.

CHARLES R. NAPIER and CHARLES S. MCILVAINE, for defendant in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

Plaintiff in error, F. L. Rabe, sued the defendant in error, D. B. Lester, in the Municipal Court of Chicago

on a lease under seal for rent due the plaintiff in error for the first flat at 4351 Greenwood avenue, Chicago, for the month of September, 1910. The rent reserved was $60 a month, and the suit was for the rent together with $15 attorney's fees stipulated in the *cognovit,* and judgment was entered for $75 against the defendant in error. On motion of defendant in error and on his filing an affidavit of defense, the judgment was allowed to stand as security and a jury trial was awarded to the defendant in error. The lease terminated September 30, 1910. It provided that the lessor should have free acess to the premises for the purpose of examining or exhibiting the same, or to make any needful repairs or alterations which the lessor might see fit to make. It also provided that if the lessee should abandon or vacate the premises, the same may be re-let by the lessor for such rent and upon such terms as the lessor saw fit, and if a sufficient sum should not thus be realized after paying the expenses for such re-letting and collecting to satisfy the rent, the lessee agreed to satisfy and pay all deficiency, and if the lessee should remove from, vacate, or cease to occupy the demised premises at any time during the term of the lease, he should, notwithstanding, pay all rent due under the lease and that it should be lawful for the lessor, his heirs, etc., to enter into the premises, and make any repairs, alterations, or do any tinting, papering of walls and ceilings, or painting or varnishing the floors or woodwork which he might see fit to do. The lease further provided that if the lessee has removed from, vacated or ceased to occupy the premises, or in the event the lessee has failed to sublet the premises for the remaining term of the lease, after having vacated the same with the written consent of the lessor, a re-entry by the lessor or a new lessee should not in any way release the lessee from the payment of rent under the terms of the lease.

The defendant in error paid the August rent. It appears that on August 17th, defendant below had

started to take his property from the flat, when the
plaintiff in error came into the flat.  Defendant in er-
ror had not talked with the plaintiff in error with ref-
erence to moving at any time prior to August 17th.
Defendant in error testified that the plaintiff in error
and Mrs. Lester, wife of defendant in error, were talk-
ing, and that Mrs. Lester said to the plaintiff in error,
"We want to move, and are going to try to clean up the
premises and see if we couldn't sublet it.  We want to
re-rent and we want to move," and that plaintiff in
error said if they could sublet it for the time remain-
ing he had no objection.  Plaintiff in eror then said,
"How about my September rent?" and Mrs. Lester
replied, "You always have had your rent, haven't
you?" and the plaintiff in error said he had, and Mrs.
Lester said, "Well, you will get it as usual this month
if we don't subrent the flat."  This was all the material
conversation between the parties.  Defendant in error
telephoned the renting agent that he was going to
move, and asked him to put up a card, and re-let the
flat if he could.  He left the keys with the janitor so
that he might if possible get another tenant for him.
In the course of two or three days, about August 20th,
the plaintiff in error sent decorators to the flat and
they calcimined and papered the rooms.  The flat re-
mained vacant for the balance of August, and no one
as tenant entered the apartment during the month of
September, the month for which plaintiff in error
claims rent from defendant in error.  About the middle
of September, a man by the name of Chapin called at
the building and saw the janitor in reference to renting
the flat.  He then saw the real estate agents of plain-
tiff in error and entered into a lease for the flat dated
the 19th day of September, 1910, for a term commenc-
ing October 1, 1910, and running until the last day
of September, 1911.  No one gave Chapin the right to
enter the apartment before October 1st.  He neverthe-
less entered into the apartment a few days after he had
made his lease.  No rent was collected from the apart-

ment for the plaintiff in error for the month of September, 1910.

The defense set forth in the affidavit filed in the case sets up that "on or about the 20th day of August, 1910, the plaintiff (plaintiff in error) entered into and upon said premises, evicting the defendant, and deprived him of any further use or occupancy thereof, and the plaintiff on or about the 15th day of September, 1910, re-rented said premises to a person whose name is unknown to this defendant, and which said person thereupon entered into possession of said premises and has ever since remained in possession and occupancy thereof."

On the trial, the court refused to instruct the jury to find the issues for the plaintiff and refused to enter a judgment *non obstante veredicto,* and overruled a motion for a new trial.

The evidence does not show, in our opinion, an eviction of the defendant in error from the premises, nor does it show any act done by the landlord for the purpose and with the intention of depriving the tenant of the enjoyment of the demised premises. To constitute an eviction of a tenant, he must be put out of the possession either of part or of the whole of the premises demised. The possession must be given up by the tenant in consequence of the acts of the landlord, and the acts must be such as warrant and justify the tenant in so doing, or the landlord must have taken the premises forcibly from the tenant. Edgerton v. Page, 5 Abb. Prac. 1. The evidence does not in the least tend to show that there was an eviction of the defendant in error under the above definition of eviction or any other warranted by the law.

There is no evidence in the record tending to show that the plaintiff in error, by consenting that defendant in error might vacate the premises on August 17th, waived any covenant in the lease which obligated the defendant in error to pay the rent during the term.

The judgment in the case is contrary to the law and the evidence. The motion for a new trial should have been sustained.

The judgment is, therefore, reversed and the cause remanded for a new trial.

*Reversed and remanded.*